**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | : | |
| Linda Bushnell, *et al.* | : | |
| | : | |
| v. | : | Civil No. CCB-04-2502 |
| | : | |
| Bank One Delaware, N.A., *et al.* | : | |
| | : | |

**<u>MEMORANDUM</u>**

Plaintiffs Linda and Joseph Bushnell filed a complaint against Bank One Delaware, N.A. ("Bank One") and Cavalry Portfolio Services, LLC ("Cavalry") in the Circuit Court for Harford County Maryland on May 14, 2004.  Plaintiffs' complaint alleges five causes of action against Bank One and Cavalry: breach of contract (Count I); violations of the "Fair Debt Reporting Act," 15 U.S.C. § 1681 (Count II); violations of the "Consumer Protection Act," 15 U.S.C. § 1601 (Count III); interference with contractual rights (Count IV); and intentional or reckless infliction of emotional distress (Count V).

Defendant Bank One filed a notice of removal to this court on July 29, 2004.  Defendant Cavalry moved to dismiss various counts of the complaint on January 17, 2005.  The plaintiffs did not respond to Cavalry's motion, and the court granted it unopposed.  Cavalry and the plaintiffs reached a settlement, and the parties stipulated to the dismissal of Cavalry on April 26, 2005.

Bank One – the sole remaining defendant in this case – has filed a motion to dismiss four of the Bushnells' five claims: breach of contract; violations of the Consumer Protection Act; interference with contractual rights; and intentional or reckless infliction of emotional distress.

1

Bank One also has filed a motion to strike the Bushnells' surreply to Bank One's reply to the Bushnells' response to Bank One's motion for judgment on the pleadings.   For the reasons that follow, the defendant's motion to dismiss and motion to strike will be granted.

## BACKGROUND

The Bushnells obtained two credit cards from Bank One.  (Compl. ¶ 5).  In June 1999, the Bushnells contacted Bank One and inquired into the balance on their credit cards.  (*Id.*).  Bank One told the Bushnells that the combined payoff amount for both credit cards was $7,349.61.  (*Id.*).  On June 22, 1999, the Bushnells sent a check for $7,349.61 to Bank One, the purpose of which was to pay off their balance on both credit cards.  (*Id.* at ¶ 6).  However, due to accounting errors by Bank One, Bank One's records reflected an inaccurate balance owed by the Bushnells on one of the accounts.  (*Id.* at ¶ 8).  Instead of crediting the Bushnells' account with the June 22, 1999 payment, the balance on Bank One's books immediately following the June 1999 payment was approximately double the payoff amount ($13,686.64) rather than zero.  (*Id.* at ¶ 8).  Even though there were no transactions on the Bushnells' accounts after the June 22, 1999 payment, the balance continued to increase, as Bank One continued to accrue interest on the incorrect balance.  (*Id.* at. ¶ 9).

In July 2000, Bank One reported the Bushnells' accounts as 150 days past due to three national consumer reporting agencies: Transunion, Experian, and Equifax.  (*Id.* at ¶ 27).  Bank One also sent the Bushnells' account to Cavalry for collection.  (*Id.* at ¶ 28).

The Bushnells first sent correspondence to Bank One regarding the discrepancy on their account on June 2, 2003.  (*Id.* at ¶ 10).  Bank One responded in an August 20, 2003 letter stating that there was no fraudulent activity on the Bushnells' account.  (*Id.* at ¶ 11).  The Bushnells, in

turn, requested copies of their credit card statements from the period of May 1999 through September 1999, since this is the period when the discrepancy on their account arose. (*Id.* at ¶ 12). These statements were faxed to the Bushnells on September 25, 2003. (*Id.*) Upon review of these statements, the Bushnells discovered several unexplained transactions. (*Id.*). Moreover, a review of their statements revealed that Bank One had mistakenly added the Bushnells' June 1999 payment to their previous balance, resulting in the new, erroneous balance of $13,686.64. (*Id.* at ¶ 13).

The Bushnells pointed out this discrepancy to Cheryl A. Fortune, Office of the President, Bank One, who authorized an audit of the Bushnells' account. (*Id.* at ¶¶ 13-14). On or about October 24, 2003, in a telephone conversation with Fortune, the Bushnells learned that they did not owe the balance reflected on the July 1999 statement sent to Cavalry for collection and reported to the consumer reporting agencies "as account charged off past due 150 days." (*Id.* at ¶ 14). Subsequently, on January 6, 2004, Fortune advised the Bushnells in a telephone conversation that Bank One had recalled the Bushnells' account from Cavalry and notified the three consumer reporting agencies to remove the account from their records.[1] (*Id.* at ¶ 16). The

---

[1] It is unclear from the complaint what actually transpired after October 24, 2003, when Fortune acknowledged that the Bushnells' account balance was erroneous. The Bushnells first assert that on January 6, 2004, Fortune advised the Bushnells in a telephone conversation that Bank One had recalled the Bushnells' account from Cavalry and notified the three consumer reporting agencies to remove the account from their records. (Compl. ¶ 16). But they later assert that Bank One refused to notify the consumer reporting agencies of its error unless the Bushnells would sign a full and final release of all claims against Bank One. (*Id.* at ¶ 31). Because Bank One's Motion for Judgment on the Pleadings responds to the Bushnells' assertion that Bank One "willfully and deliberately refused to provide the accurate information to the consumer reporting agencies unless Plaintiffs signed a full and final release of all claims against Bank One," (Def.'s Mot. for J. on the Pleadings 3) the court does not find that Bank One would be unfairly prejudiced if the court accepts the proposition in paragraph 31 of the complaint.

actions alleged to have been taken by Fortune were recorded in correspondence dated January 9, 2004 from Fortune.  (*Id.*).

The Bushnells received telephone calls and collection notices from Cavalry during February and March 2004, despite the fact that Bank One had acknowledged that the Bushnells did not have an outstanding balance on their account.  (*Id.* at ¶¶ 17-20).  In February 2004, a representative from Cavalry informed the Bushnells that the only indication in its files related to its collection efforts was that the matter was still open.  (*Id.* at ¶ 17).  The Bushnells faxed a copy of Bank One's January 9, 2004 letter to Cavalry in order to demonstrate that their account was not past due.  (*Id.*).  Nonetheless, the Bushnells continued to receive telephone calls from Cavalry concerning their allegedly delinquent account with Bank One.  (*Id.* at ¶¶ 19-20).

The Bushnells applied for a home equity loan with SunTrust Bank in February 2004. (*Id.* at ¶ 21).  SunTrust denied the loan application on or about March 27, 2004, stating that the reason for disapproval was the adverse entry listed by Bank One and Cavalry on their Equifax Credit Report.  (*Id.* at ¶ 21).

## <u>ANALYSIS</u>

Bank One styled its motion as a request for partial judgment on the pleadings (Fed. R. Civ. P. 12(c)) rather than a motion to dismiss (Fed. R. Civ. P. 12(b)(6)).  This distinction, however, "'is one without a difference,' because motions for judgment on the pleadings under Rule 12(c) are reviewed according to the same standard as motions to dismiss under Rule 12(b)(6)."  *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-406 (4th Cir. 2002).

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint;

importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999) (internal quotation marks and alterations omitted).  When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  Consequently, a motion to dismiss under Rule 12(b)(6) may be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *see also Edwards*, 178 F.3d at 244.  In addition, because the court is testing the legal sufficiency of the claims, the court is not bound by the plaintiff's legal conclusions.  *See, e.g.*, *Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) (noting that the "presence . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)" when the facts alleged do not support the legal conclusions); *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995) (affirming Rule 12(b)(6) dismissal with prejudice because the plaintiff's alleged facts failed to support her conclusion that the defendant owed her a fiduciary duty at common law).

**Breach of Contract Claim (Count I)**

The Bushnells allege three actions on the part of Bank One that constitute breach of contract.  First, the Bushnells allege that Bank One made an error in the application of funds to the Bushnells' account on or about June 24, 1999.  (Compl. ¶ 26).  Second, the Bushnells allege that Bank One wrongfully reported the Bushnells' account to three national consumer reporting agencies in July 2000.  (*Id.* at ¶ 27).   Third, the Bushnells allege that Bank One, after it became

aware of its mistake in October 2003, refused or neglected to remove the negative material from the Bushnells' credit reports with the three national consumer reporting agencies.  (*Id.* at ¶¶ 14, 16)**.**  It is not necessary for the court to address the merits of the Bushnells' breach of contract claim because it is barred by the statute of limitations.

Under Maryland law, a cause of action for breach of contract must be filed within three years of the date the cause of action accrues.  Specifically, Md. Code Ann., Cts. & Jud. Proc. § 5-101 (1998) provides: "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."  Ordinarily, a breach of contract claim accrues on the date the contract is breached or anticipatorily breached, not the date upon which the plaintiff discovers the defendant's breach.  *See The Catholic Univ. of Am. v. Bragunier Masonry Contractors, Inc.,* 775 A.2d 458, 470 (Md. Ct. Spec. App. 2001)**.**  The statute of limitations for the Bushnells to bring an action based on a breach they contend occurred in June 1999 therefore expired in June 2002 and, likewise, the statute of limitations to bring an action based on a breach they contend occurred in July 2000 expired, at the very latest, in July 2003.  The Bushnells' cause of action for breach of contract is therefore time-barred, because the Bushnells did not file a complaint until May 14, 2004.

The Bushnells also allege a breach of contract based on paragraphs 14 and 16 of the complaint, which describe the discovery of the billing error by Bank One in October 2003 and Bank One's subsequent commitment to contact the consumer reporting agencies about this error in January 2004.  Both paragraphs, however, merely describe conversations and correspondence between Bank One and the Bushnells concerning the earlier breaches of contract in June 1999

and July 2000.  Thus, they cannot be construed as a new and additional breach of contract.

The Bushnells argue that the doctrine of equitable estoppel bars Bank One from asserting the defense of statute of limitations.  The Bushnells claim that they relied on numerous representations that Bank One would remedy the errors made to the Bushnells' account and would contact the consumer reporting agencies to withdraw the Bushnells' negative credit report.  Relying on these representations, the Bushnells did not immediately file suit against Bank One upon discovery of the breach.  The only representations on which the Bushnells could have relied, however, were made on or after September 25, 2003.  (Compl. ¶ 12).  Since the last alleged breach of contract took place in July 2000, the statute of limitations to bring any action thereon would have expired in July 2003.  As a result, the plaintiffs could not have relied on any statement made on or after September 25, 2003, because the statute of limitations had already run.

Further, while the Maryland courts recognize the doctrine of equitable estoppel, they do so only in very limited circumstances.  To be more precise, the Maryland courts "have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it." *Booth Glass Co., Inc. v. Huntingfield Corp.,* 500 A.2d 641, 645  (Md. 1985) (internal citations omitted)**.**  Accordingly, the doctrine of equitable estoppel will not toll the running of the statute of limitations "absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.'" *Id., citing Nyitrai v. Bonis,* 292 A.2d 642 (Md. 1972).  The Bushnells have made no showing that Bank One held out any inducement not to file suit, and there is no indication that Bank One indicated

in any way that the statute of limitations would not be pleaded.  Thus, the doctrine of equitable

estoppel cannot toll the statute of limitations for the Bushnells, and their breach of contract claim

will be dismissed.

**Consumer Protection Act Claim**

Count III of the Complaint, entitled "Consumer Protection Act," seeks damages solely

against former defendant Cavalry Portfolio Services and not against Bank One.  Because Count

III seeks no damages against Bank One, and further, as defendant Cavalry was previously

dismissed from the litigation, Count III of the Complaint fails to state a claim on which relief

may be granted and will be dismissed.

**Interference with Contractual Rights**

Plaintiffs initially seek damages for "interference with contractual rights."  (Compl.

Count IV).  Under Maryland law, "[t]he elements of tortious interference with contract are: 1)

existence of a contract between plaintiff and a third party; 2) defendant's knowledge of that

contract; 3) defendant's intentional interference with that contract; 4) breach of that contract by

the third party; 5) resulting damages to the plaintiff."  *Ultrasound Imaging Corp. v. Am. Soc'y of*

*Breast Surgeons,* 358 F.Supp.2d 475, 479 (D.Md. 2005) (*citing Fraidin v. Weitzman,* 611 A.2d

1046 (Md. 1992) and *Fowler v. Printers II,* 598 A.2d 794 (Md. 1991)).

The Bushnells have failed to establish the *prima facie* elements of interference with

contractual relations.  First, the Bushnells failed to plead the existence of a contract between

themselves and any third party.  Although the Bushnells describe their attempts to obtain a home

equity loan from SunTrust Bank**,** the Bushnells do not allege that they ever entered into any

contract with SunTrust.  (Compl. ¶ 21).  As the Maryland Court of Special Appeals observed,

8

"Obviously if there is no valid contract, one cannot be said to have interfered with its existence."

*Fraidin,* 611 A.2d at 1057.  Second, the Bushnells do not plead that Bank One had knowledge of

such a contract.  A party cannot be liable for interference with contractual relations where it does

not know of the contract with which that party allegedly interfered.  *See Daugherty v. Kessler,*

286 A.2d 95, 98 (Md. 1972); *see also Stannard v. McCool,* 84 A.2d 862, 867 (Md. 1951)

("although the actor's conduct is in fact the cause of another's failure to perform a contract, the

actor does not induce or otherwise purposely cause that failure if he has no knowledge of the

contract.").  Third, there is no allegation in the complaint that, as a result of Bank One's actions, a

third-party breached a contract with the Bushnells; as stated above, the Bushnells never entered

into a contract with SunTrust.  In sum, the Bushnells have failed to plead the elements of a *prima*

*facie* case for interference with contractual relations.

The Bushnells attempt to correct this pleading error in their memorandum.  Relying on

*Sharrow v. State Farm Mut. Ins. Co.,* 511 A.2d 492, 497 (Md. 1986), the Bushnells argue that the

tort of interference with contractual rights incorporates the tort of interference with business

relationships, and that Bank One committed the latter tort.  *See also Natural Design, Inc. v. The*

*Rouse Co.,* 485 A.2d 663, 674 (Md. 1984).  A more formal amendment, however, will be

required, as  "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition

to a motion to dismiss."  *Mylan Labs, Inc. v. Akzo, N.V.,* 770 F.Supp. 1053, 1068 (D.Md. 1991).

Interference with business relationships, absent any breach of contract, requires proof of

the following elements: 1) intentional and willful acts; 2) calculated to cause damage to the

plaintiffs in their lawful business; 3) done with an unlawful purpose to cause such damage and

loss, without right or justifiable cause on the part of the defendants (which constitutes malice);

and 4) actual damage and loss resulting. *K&K Mgmt., Inc. v. Lee*, 557 A.2d 965, 973 (Md. 1989). As the Maryland courts have explained, the "tortious or deliberate intent to harm a plaintiff's business relationship is not alone sufficient to support an intentional interference claim. There must also be proof that the defendant's conduct in interfering with contract or business relations was accomplished through *improper means.*" *Spengler v. Sears. Roebuck & Co.,* 878 A.2d 628, 641-42 (Md. Ct. Spec. App. 2005) (*citing Lyon v. Campbell,* 707 A.2d 850 (Md. Ct. Spec. App. 1998) (emphasis in original)). Expanding on the issue of "improper means," the Court of Appeals listed them as "violence or intimidation, defamation, injurious falsehood or other fraud, violation of the criminal law, and institution or threat of groundless civil suits or prosecutions in bad faith." *K&K Mgmt., Inc.,* 557 A.2d at 979. To the extent that the Bushnells intend to pursue a claim against Bank One for interference with business relationships, they may seek leave to file an amended complaint that includes this claim, if they can allege the required facts.

**Intentional Infliction of Emotional Distress**

In order to establish a cause of action for intentional infliction of emotional distress, a plaintiff must establish four elements: 1) the conduct must be intentional or reckless; 2) the conduct must be extreme and outrageous; 3) there must be a causal connection between the wrongful conduct and the emotional distress; and 4) the emotional distress must be severe. *See Batson v. Shiflett,* 602 A.2d 1191, 1216 (Md. 1992). All four elements must be shown. (*Id.*). "Recovery for this theory of liability has been severely limited in Maryland to the most extreme cases of uncivilized behavior." *Bryant v. Better Bus. Bureau of Greater Maryland, Inc.,* 923 F.Supp. 720, 746 (D.Md. 1996).

The Bushnells assert that Bank One engaged in the following conduct, which they allege

constitutes outrageous behavior: 1) because of accounting errors, the Bushnells were told that the balance due on their credit card was $13,686.14, rather than zero (Compl. ¶ 8); 2) the Bushnells' account was "wrongfully reported ... as charged off past due 150 days" in July 2000 "to three national consumer reporting agencies" (Compl. ¶ 27); 3) Bank One sent the Bushnells' account to Cavalry for collection (Compl. ¶ 28); 4) "Bank One willfully and deliberately refused to provide the accurate information to the consumer reporting agencies unless [the Bushnells] signed a full and final release of all claims against Bank One" (Compl. ¶ 31); and 5) "Bank One willfully and deliberately ignored its duty to correct and update information required by [federal law]." (Compl. ¶ 32).   This behavior fails to rise to the level of outrageousness that has been found sufficient by the Maryland courts to support a claim for intentional infliction of emotional distress.   While improperly reporting the Bushnells to the consumer reporting agencies and Cavalry might have led to embarrassment, Bank One's conduct did not constitute "truly egregious acts" under the relevant case law.  *Batson*, 602 A.2d at 1216.

Second, the Bushnells have failed to establish that their emotional distress was "so severe as to have disrupted [their] ability to function on a daily basis."  *Bryant*, 923 F.Supp. at 750.  The Bushnells allege that, as a result of Bank One's action, they "are afraid to answer the telephone and [are] caused great anxiety when the telephone rings."  (Compl. ¶ 44)  The Bushnells also claim that Bank One's conduct is the "direct and proximate cause of embarrassment and humiliation when Sun Trust denied the Plaintiff's Home Equity Loan...."  (Compl. ¶ 46).  These allegations of emotional distress do not rise to the level of severe emotional distress.  Mere anxiety and embarrassment do not constitute emotional distress "*so severe that no reasonable man could be expected to endure it.*"   *Bryant*, 923 F. Supp. at 749 (emphasis in original).

Therefore, Bank One's motion will be granted on the intentional infliction of emotional distress claim.

**Motion to Strike Plaintiffs' Surreply**

Bank One has filed a motion to strike the Bushnells' surreply. Bank One moved for judgment on the pleadings, the Bushnells responded in opposition, and, as is customary, Bank One filed a reply. The Bushnells then submitted a second response in opposition, raising additional arguments. Bank One moved to strike the Bushnells' surreply, arguing that the Bushnells violated Local Rule 105.2 when they submitted the additional motion without the court's permission. Under Local Rule 105.2, "[u]nless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Surreplies may be permitted when a party would otherwise not have an opportunity to address arguments presented to the court for the first time in the opposing party's reply. *See Khoury v. Meserve,* 268 F.Supp.2d 600, 605 (D.Md. 2003). That is not the case here. There were no new issues or arguments raised in Bank One's reply. The Bushnells' surreply focuses on whether Bank One breached its contract with the Bushnells, whether the Bushnells' breach of contract claim is barred by the statute of limitations, and whether Bank One tortiously interfered with the Bushnells' contractual rights. These issues – including the statute of limitations defense – were raised in Bank One's motion for judgment on the pleadings. Therefore, the Bushnells had an opportunity to address these matters in their opposition brief, and their surreply will be stricken.

A separate Order follows.

| | |
|---|---|
|   October 18, 2005   |   /s/   |
| Date | Catherine C. Blake |

United States District Judge